IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GOSPEL LIGHT MENNONITE CHURCH MEDICAL AID PLAN, INC., | ) CASE NO. 5:22-cv-00581-DAR ) ) |
| *Plaintiff*, | ) JUDGE DAVID A. RUIZ ) ) MAGISTRATE JUDGE HENDERSON |
| vs. | ) ) ) |
| HUDSON EXCESS INSURANCE COMPANY, | ) ) **AMENDED COMPLAINT** ) |
| *Defendant*. | ) **Jury Demand Indorsed Hereon** ) ) |

Now comes Plaintiff Gospel Light Mennonite Church Medical Aid Plan, Inc. dba Liberty Healthshare ("Liberty") and, for its Amended Complaint against Defendant Hudson Excess Insurance Company ("Hudson"), alleges as follows:

### NATURE OF ACTION

1. This is a civil action that arises from a dispute between Liberty and Hudson regarding Hudson's obligation to defend and indemnify Liberty and the individual insureds against liability for claims covered under an insurance policy Liberty bought from Hudson.

### PARTIES, JURISDICTION, AND VENUE

2. Liberty is a nonstock, nonprofit corporation organized under the laws of Virginia and has its principal place of business in Canton, Ohio. Liberty is engaged primarily in the business of providing cost-sharing programs for medical care expenses.

3. Hudson is a corporation organized under the laws of Delaware with its principal place of business in New York, New York. Hudson is engaged in the business of underwriting and selling insurance policies.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Liberty and Hudson are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Liberty's claims occurred in this judicial district.

## THE INSURANCE POLICY

6. On or about April 9, 2021, in consideration for premiums paid by Liberty, Hudson duly executed and delivered to Liberty a certain Not-For-Profit Defender Management Liability Insurance Policy bearing policy number HFP-HE-NPP-5016-040121 (the "D&O Policy"), a true and accurate copy of which is attached hereto as **Exhibit A**.

7. Commencing April 1, 2021, and expiring April 1, 2022, the D&O Policy provides for $1,000,000.00 in aggregate coverage under the Director, Officers and Company Liability Coverage Part, which consists of three separate insuring agreements: "Insuring Agreement I (A)," "Insuring Agreement I (B)," and "Insuring Agreement I (C)." Exhibit A, Declarations p. 2.

8. Each insuring agreement under the Director, Officers and Company Liability Coverage Part describes a different type of liability and carries a separate retention or deductible:

   a. Insuring Agreement I(A) relates to "Executive and Employee Liability" and has a retention of $0.00 for every claim arising under it. Pursuant to this insuring agreement, "the Insurer [Hudson] shall pay **Loss** on behalf of an **Injured Person**, which such **Injured Person** has become legally liable to pay as a result of a **Claim** first made against them during the **Policy Period** or Discovery Period, if applicable, for a **Wrongful**

2

**Act** that takes place during or prior to the **Policy Period**." Exhibit A, Directors, Officers and Company Liability Coverage Part, p. 1 (emphases in original and denote defined terms).

      b.     Insuring Agreement I(B) relates to "Company Indemnification Liability" and has a retention of $25,000.00 for every claim arising under it. Pursuant to this insuring agreement, "the Insurer shall pay **Loss** on behalf of the Company [Liberty] for which the Company has … indemnified an **Insured Person**, and which such **Insured Person** has become legally liable to pay as a result of a **Claim** first made against them during the Policy Period or Discovery Period, if applicable, for a **Wrongful Act** that takes place during or prior to the **Policy Period**." *Id.*

      c.     Insuring Agreement I(C) relates to "Company Liability" and has a retention of $25,000.00 for every claim arising under it. Pursuant to this insuring agreement, "[t]he Insurer shall pay **Loss** on behalf of the **Company**, which the **Company** has become legally liable to pay as a result of a **Claim** made against it during the **Policy Period** or Discovery Period, if applicable, for a **Wrongful Act** that takes place during or prior to the **Policy Period**." *Id.*

9.     The Directors, Officers and Company Liability Coverage Part defines an "Insured Person" as any "Insured Executive" or any "Employee." Exhibit A, Directors, Officers and Company Liability Coverage Part, p. 2. The D&O Policy generally defines an "Insured Executive" to mean any "past, present or future duly elected trustee, director, duly appointed officer or duly elected or appointed member of a board of managers of the **Company**…." **Exhibit A**, General Terms and Conditions Part, pp. 2–3. The D&O Policy defines the "Company" as the named insured, Liberty, as well as any of its subsidiaries. *Id.* at pp. 1–2.

3

10. The Directors, Officers and Company Liability Coverage Part defines "Loss" to include not only judgment and settlement amounts, but also "**Defense Costs** that an **Insured** is legally liable to pay." Exhibit A, Directors, Officers and Company Liability Coverage Part, p. 2.

11. The same Coverage Part defines "Wrongful Act" to include any actual or alleged "error, misstatement, misleading statement, act, omission, neglect or breach of duty committed by an **Insured Person** … or, with regard to Insuring Agreement (C) the **Company**" or "matter claimed against an **Insured Person**, by reason of their serving in such capacity…." Exhibit A, Directors, Officers and Company Liability Coverage Part, p. 4.

12. Accordingly, the D&O Policy requires Hudson to pay on behalf of Liberty and Insured Persons all sums that they become legally obligated to pay because of an alleged "Wrongful Act" that occurs during or before the policy period, including defense costs. Hudson's contractual obligation to make full payment to or on behalf of Liberty and the individual insureds is subject only to the retentions, exclusions, and limits, if any, stated in the D&O Policy.

## THE CLASS ACTION LAWSUIT

13. On October 21, 2021, Liberty was named as a defendant in a certain *Complaint with Class Action Allegations and Request for Restitution, Temporary, Preliminary and Permanent Injunctive Relief, Removal of Trustees, and Costs* (the "Class Action Complaint") filed in the United States District Court for the Northern District of Ohio in a case captioned *Glasgow, et al. v. Beers, et al.*, Case No. 5:21-cv-02001-JRA (the "Class Action Lawsuit"), however, it was erroneously identified as "Liberty Healthshare, Inc." Also named as defendants in the Class Action Lawsuit were some of Liberty's past and present directors, officers, trustees, and employees including Druzilla Abel, Dale E. Bellis, Pamela K. Johnson, and Matt Bellis.

14. The Class Action Complaint was subsequently amended to name "Gospel Light Mennonite Church Medical Aid Plan, Inc., dba Liberty Healthshare, Inc." Pamela K. Johnson and Matt Bellis were dismissed prior to the amendment. A true and accurate copy of the First Amended Complaint (hereinafter, the "Amended Class Action Complaint"), which is attached as **Exhibit B**, raises eight claims against Liberty and the remaining individual insureds, Druzilla Abel and Dale E. Bellis, including breach of contract and covenant of good faith and fair dealing (Count I); money had and received (Count II); unjust enrichment (Count III); violations of 18 U.S.C. § 1962(c) (Count IV); conversion (Count V); breach of fiduciary duty (Count VI); intentional, or alternatively, negligent misrepresentation (Count VII); and accounting (Count VIII).

15. The Amended Class Action Complaint contains a number of different categories of factual allegations against Liberty and the individual insureds, including but not limited to:

    a. Allegations that Liberty was improperly formed and therefore does not meet the legal requirements to be a faith-based healthcare sharing ministry ("HCSM");

    b. Allegations that Liberty offers traditional, indemnity-based health insurance;

    c. Allegations that Liberty's directors and officers misused Liberty to funnel money to its principals; and

    d. Allegations that Liberty squandered funds by paying certain vendors over-market prices.

16. The Class Action Lawsuit triggered the D&O Policy, as Hudson agreed to indemnify and defend Liberty and the individual insureds from claims made during the policy period and the October 21, 2021 filing of the Class Action Complaint fell within the policy period.

17. In accordance with the D&O Policy, Liberty provided timely notice of the Class Action Lawsuit to Hudson on November 11, 2021 and requested that Hudson honor its contractual obligations to defend and indemnify Liberty and the individual insureds with regard to the Class Action Lawsuit.

## HUDSON'S REFUSAL TO DEFEND AND INDEMNIFY LIBERTY

18. Despite the plain terms of the D&O Policy and its provision of $1,000,000.00 in coverage, on November 16, 2021, Hudson informed Liberty that it would neither defend Liberty or the individual insureds from, nor indemnify them for, the claims raised against them in the Class Action Lawsuit.

19. As grounds for its denial of a defense and indemnity, Hudson argued that an exclusion to coverage under the D&O Policy applies to all allegations raised in the Class Action Lawsuit, namely, the Managed Care Activities Exclusion contained in the Healthcare Amendatory Endorsement (Endorsement No. 3) in the D&O Policy.

20. Following Hudson's initial denial of coverage, counsel for Liberty sent multiple letters to Hudson and its counsel identifying authorities requiring Hudson to honor its obligation to provide coverage to Liberty and the individual insureds and identifying those allegations in the Class Action Complaint that do not fall under the Managed Care Exclusion.

21. Despite Liberty's prompt notice to Hudson and its efforts to identify for Hudson the unequivocal basis upon which it owed defense and indemnity coverage under the D&O Policy, Hudson remained steadfast in its refusal to defend or indemnify Liberty or the individual insureds in the Class Action Lawsuit.

22. Hudson's reliance upon the Managed Care Activities Exclusion is unreasonable and wrong, as it is contrary to the plain terms of the D&O Policy and controlling law.

23. As a result of Hudson's wrongful denial of a defense and indemnity in violation of the terms of the D&O Policy, Liberty and the individual insureds have incurred and will continue to incur investigation, defense, and indemnity costs in the Class Action Lawsuit that should be borne by Hudson.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment)**

24. Liberty incorporates by reference, as if fully restated herein, the allegations set forth in paragraphs 1 through 23 of the Complaint.

25. This is a claim for a declaratory judgment pursuant to § 2721.02(A) of the Ohio Revised Code and Rule 57 of the Ohio Rules of Civil Procedure. Liberty seeks a judicial determination of the rights and duties of Liberty and Hudson with respect to an actual controversy arising out of the D&O Policy issued by Hudson to Liberty relating to Hudson's coverage obligations to defend Liberty and the individual insureds in the Class Action Lawsuit, pay for the defense of Liberty and the individual insureds in the Class Action Lawsuit, and indemnify Liberty and the individual insureds for any judgment or settlement resulting from the Class Action Lawsuit.

26. Pursuant to the terms of the D&O Policy, Hudson is obligated to defend and indemnify Liberty and the individual insureds for all sums they become obligated to pay through judgment, settlement, or otherwise, as a result of the Class Action Lawsuit.

27. As a result of the Class Action Lawsuit and Hudson's denial of coverage for the same under the D&O Policy, there is an actual, justiciable controversy existing between Liberty and Hudson as to Hudson's obligation to defend and indemnify Liberty and the individual insureds in the Class Action Lawsuit.

28. The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between Liberty and Hudson with respect to the availability of coverage under the D&O Policy, and the dispute between the parties over Hudson's coverage under the D&O Policy is of sufficient immediacy to justify the issuance of declaratory relief by this Court.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract)**

29. Liberty incorporates by reference, as if fully restated herein, the allegations set forth in paragraphs 1 through 28 of the Complaint.

30. The D&O Policy is a valid and enforceable contract between Liberty and Hudson.

31. Liberty timely paid all premiums due under the D&O Policy and has performed all other obligations of the insured under the same.

32. Hudson has wrongly taken the position that an exclusion to coverage under the D&O Policy applies, namely the Managed Care Activities Exclusion, and that it does not have to perform its defense or indemnification obligations under the D&O Policy with respect to the Class Action Lawsuit.

33. The D&O Policy, applicable law, and pertinent facts demonstrate that no exclusion to coverage applies, and Hudson is obligated to both defend and indemnify Liberty and the individual insureds up to the limits described in the D&O Policy.

34. By refusing to defend or pay for the defense of Liberty and the individual insureds in the Class Action Lawsuit, and by stating that there is no indemnity coverage under the D&O Policy for the claims raised therein, Hudson has failed to honor its defense and indemnity obligations and has breached the D&O Policy.

35. As a direct and proximate result of Hudson's breaches of the D&O Policy, Liberty and the individual insureds have suffered and will continue to suffer damages by having to pay

and provide for their own defense in the Class Action Lawsuit and by being deprived of indemnification for any judgment or settlement resulting from the same.

### THIRD CLAIM FOR RELIEF
(Bad Faith)

36. Liberty incorporates by reference, as if fully restated herein, the allegations set forth in paragraphs 1 through 35 of the Complaint.

37. Hudson has a duty to act in good faith in its handling of Liberty's claims under the D&O Policy. Specifically, Hudson has a duty to act in good faith when deciding whether or not the claims raised in the Class Action Lawsuit trigger coverage and whether or not an exclusion to coverage applies.

38. Hudson has failed to exercise good faith in the processing of Liberty's claim relating to the Class Action Lawsuit because its refusal to defend and indemnify Liberty and the individual insureds is not predicated on circumstances that furnish reasonable justification for its denial of coverage.

39. Hudson acted arbitrarily, capriciously, and in bad faith by cherry-picking only certain allegations in the Class Action Complaint that it believes fall under an exclusion to coverage in the D&O Policy, while refusing to consider other allegations that contradict the application of this exclusion, and denying Liberty and the individual insureds a defense and indemnity on this basis. Hudson ignored those allegations in the Class Action Complaint that clearly trigger coverage, even after they were identified by Liberty.

40. In addition, Hudson issued its claim denial a mere five (5) days after being provided notice and failed to conduct an adequate investigation of the allegations raised in the Class Action Lawsuit.

41. To date, Hudson has not defended Liberty or its directors or officers in the Class Action Lawsuit, nor has it paid for the defense of Liberty or the individual insureds in the Class Action Lawsuit. Instead, Hudson has denied that it has any obligation to do so and maintains that there is no defense or indemnity coverage under the D&O Policy for the Class Action Lawsuit despite Liberty's efforts to educate Hudson on those allegations in the Class Action Complaint that clearly trigger coverage.

42. Hudson's wrongful and bad faith claims handling and denial of coverage to Liberty and the individual insureds has caused Liberty and the individual insureds to suffer damages in an amount to be proven at trial in excess of $25,000.00.

WHEREFORE, Liberty prays for a judgment on its Complaint as follows:

A. On its First Claim for Relief, a declaration that the Class Action Lawsuit involves claims covered under the D&O Policy and that Hudson is obligated to defend Liberty and the individual insureds, or pay for their defense, in the Class Action Lawsuit, and indemnify Liberty and the individual insureds for any judgment or settlement resulting from the Class Action Lawsuit up to $1,000,000.00;

B. On its Second Claim for Relief, an award of all direct and indirect compensatory damages, and Liberty's attorneys' fees incurred in this action, resulting from Hudson's breach of the D&O Policy in an amount to be established at trial, but no less than $25,000.00;

C. On its Third Claim for Relief, an award of all direct and indirect compensatory damages, punitive damages, and attorneys' fees as a result of Hudson's bad faith denial of coverage under the D&O Policy in an amount to be established at trial, but no less than $25,000.00; and

D. An award of costs and pre- and post-judgment interest at the maximum statutory or other rate; and

E. Such other and further relief as this Court deems proper and just.

Respectfully submitted,

/s/ Amanda M. Leffler
Amanda M. Leffler (0075467)
Kerri L. Keller (0075075)
P. Wesley Lambert (0076961)
**BROUSE MCDOWELL, L.P.A.**
388 South Main Street, Suite 500
Akron, Ohio 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
E-mail: aleffler@brouse.com
kkeller@brouse.com
wlambert@brouse.com

Brian A. Coulter (0092158)
**BROUSE MCDOWELL, L.P.A.**
6550 Seville Drive, Suite B
Canfield, OH 44406
Telephone: (330) 286-7551
Facsimile: (330) 533-6198
E-mail: bcoulter@brouse.com

*Attorneys for Plaintiff*

11

## JURY DEMAND

Plaintiff Gospel Light Mennonite Church Medical Aid Plan, Inc. hereby demands, pursuant to Rules 38 and 48 of the Ohio Rules of Civil Procedure, trial by a jury constituted of the maximum number of jurors permissible by law on all issues triable at law.

/s/ Amanda M. Leffler
Amanda M. Leffler (0075467)
Kerri L. Keller (075075)
P. Wesley Lambert (0076961)
Brian A. Coulter (0092158)

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Amanda M. Leffler
Amanda M. Leffler (0075467)

[1539822]